```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-14042-Civ-KING
                              MAGISTRATE P. A. WHITE
DANIEL MAGLIO,             :

      Plaintiff,           :

v.                         :           REPORT OF
                                    MAGISTRATE JUDGE
DR. HARIDAS NARSI BHADJA,  :

      Defendant.           :
_____
```

## I. Introduction

Daniel Maglio filed a *pro se* civil rights complaint pursuant to Title 42, section 1983. He seeks damages for inadequate medical treatment for lower back pain.

The case is pending against Dr. Bhadja in his individual capacity on the claim of deliberate indifference to Maglio's serious medical needs. (DE# 1) (complaint); (DE# 20) (screening order); see (DE# 15) (report and recommendation). Presently before the Court is Dr. Bhadja's motion for summary judgment. (DE# 86).[1]

### A. Plaintiff's Claims

Maglio, Dr. Bhadja is an employee of contractor Wexford, and is the only doctor assigned to Okeechobee Correctional Institution (OCI), where Maglio was housed. Maglio alleges he suffered severe constant back pain since March 23, 2005, that has affected his

---

[1] Dr. Bhadja's motion to dismiss (DE# 57) based on Magilo's repeated refusal to authorize the release of his medical records is also pending. As Maglio appears to have finally complied with his discovery obligations, the motion to dismiss should be denied as moot. Maglio's motion for an extension of time (DE# 92) to file objections to the undersigned's order (DE# 90) denying the motion to change venue is also pending.

sleep and daily activities, and eventually prevented him from walking unassisted. Maglio alleges he notified Bhadja of a serious medical need for which he was receiving inadequate treatment by repeatedly using OCI's sick call and medical grievance procedures. He alleges Dr. Bhadja knew Maglio was suffering from a serious medical condition requiring treatment; he was only examined and treated by nurses; Dr. Bhadja refused to examine him, order tests or prescribe any treatment due to cost concerns; Dr. Bhadja diagnosed him without examining him, which constitutes malpractice and negligence; Dr. Bhadja sent him to the Reception and Medical Center ("RMC") for an unrelated concern, refused to authorize surgery that the RMC specialist recommended, and blocked Maglio's return to OCI, and improperly caused him to be transferred to Everglades Correctional Institution ("ECI") so that ECI's doctor would have to absorb the cost of his back surgery.

Maglio alleges the denial and delay of treatment caused constant severe and unnecessary pain and made his condition worsen.

He seeks a jury trial for compensatory and punitive damages.

B.   Defendant's Motion for Summary Judgment

In his motion for summary judgment, (DE# 86), and supporting memorandum of law, (DE# 87), Dr. Bhadja argues Maglio received appropriate care during the four-month period he was under Dr. Bhadja's care at OCI between his first sick call on March 25, 2005, and his transfer to RMC on July 26, 2005. He argues Maglio's mere disagreement regarding scope of required care is not deliberate indifference.

Dr. Bhadja supports his motion with an affidavit of board certified orthopedic surgeon Dr. Michael S. Ziede. (DE# 87-1). Dr.

Ziede has evaluated, diagnosed, and treated over 50,000 patients with spinal conditions. He reviewed Maglio's medical records and formulated the following opinions:

> E.  It was reasonable for Dr. Bhadja to hold Mr. Maglio at the Okeechobee Correctional Institution prior to the transfer to the Reception and Medical Center.
>
> F.  It was reasonable for the medical staff at the Okeechobee Correctional Institution to prescribe medications and order imaging studies under the supervision of Dr. Bhadja.
>
> G.  It was more than reasonable for Mr. Maglio to receive surgery within 16 months of his initial complaints of low back pain. The record does not document in any way that the alleged lack of medical treatment received at the Okeechobee Correctional Institution delayed the eventual surgery and/or hampered Mr. Maglio's recovery from the surgery.
>
> H.  It seems that Mr. Maglio is claiming that Dr. Bhadja did not provide adequate medical care at Okeechobee Correctional Institution from March 25, 2005 to July 26, 200. Mr. Maglio is not claiming that the alleged lack of medical treatment from that four month period had any effect in the healing of his back.
>
> I.  In my opinion, there was no deviation in the standard of care by Dr. Bhadja.

(DE# 87-1 at 3-4).

    C.    <u>Plaintiff's Response</u>

Maglio's Response, (DE# 91), largely reiterates the allegations set forth in his complaint. He additionally alleges Dr. Bhadja refused to sign authorization for orthopedic consultation, put a "block" on Maglio's return to OCI, caused him to be transferred to ECI which delayed his surgery and forced Dr. Roger A. Brown to absorb the cost of the surgery at ECI.

Maglio also alleges defendant would not authorize a gurney to transport him to the infirmary on March 23, 2005, so he was not able to use a sick call until March 25, 2005, when other prisoners helped him walk to infirmary.

He has submitted his own affidavit stating the defendant's expert has never spoken to or examined him.

    D.    <u>Time Line</u>

Both parties have submitted medical records[2] and grievances which are summarized in relevant part as follows:

| | |
|---|---|
| 3/23/05 | Back becomes painful. |
| 3/25/05 | "Back Pain Assessment:" by ARNP: pain for 3 days, increases with activity, decreases with position change. Muscle spasms, numbness, tingling, decreased range of motion. Plan: Motrin and Tylenol, follow up, clinical referral. (DE# 87-2 at 1).<br><br>Health Slip/Pass: bed rest lay-in 3/25-3/28. (DE# 8702 at 12). |
| 3/30/05 | Chronological Record of Health Care: sick call, radiating back pain. (DE# 87-2 at 20).<br><br>Health Slip/Pass: bed rest lay-in 3/30-4/14. (DE# 87-2 at |

---

[2] Illegible portions of the medical records have been omitted.

12).

4/1/05        Chronological Record of Health Care: Institution requests evaluation of need for assistance; gait unsteady, requires assistance. (DE# 87-2 at 21).

              Health Slip/Pass: assistance making bed and carrying food tray 4/1/05-4/1/06. (DE# 87-2 at 14).

              Health Services Profile: change in medical grade. (DE# 87-2 at 15).

4/9/05        Generic Nursing Assessment: by ARNP; sick call, severe back pain and slow gait. Plan: physician referral; Motrin x3 days, analgesic balm; MD/ARNP to assess for pain medication. (DE# 87-2 at 8).

4/12/05       Chronological Record of Health Care: leg and back pain, unsteady gait. (DE# 87-2 at 22).

              Physician's Order Sheet: by Dr. Bhadja; Indocin 50 mg x14 days; Diagnosis: Arthritis. (DE# 87-2 at 6).

4/22/05:      Chronological Record of Health Care: sick call, medication not relieving pain. (DE# 87-2 at 22).

              "Back Pain Assessment:" by ARNP; pain increases with walking, sitting, sleeping, deep breathing; numbness/tingling in right foot; uses cane; pain medication not working. Clinician referral/notification.(DE# 87-2 at 2).

4/27/05       Chronological Record of Health Care: sick call, back pain; strength & reflexes tested. (DE# 87-2 at 23).

              Physician's Order Sheet: by ARNP; Indocin, Naprosyn 500 mg. Diagnosis: Arthritis. (DE# 87-2 at 6).

5/4/05        <u>Grievance</u>: to Warden; unjustifiably denied medical care; wants referral to neuromuscular physician; "the pain is severe and constant!" (DE# 1 at 36).

5/9/05        Chronic Illness Clinic: endocrine, cardiovascular, and gastrointestinal evaluation. (DE# 87-2 at 9).

              Health Slip/Pass: sit at handicap table 5/9/05-5/9/06. (DE# 87-2 at 14).

5/19/05       <u>Grievance Response</u>: "Documentation indicates that you

|   |   |
|---|---|
|   | were seen on 5/9/05 in clinic. Labs were reviewed and rescheduled for further lab testing and follow up with clinician. You will be evaluated and a decision will be made whether referral to outside specialist is needed. Based on the aforementioned, your grievance is Denied." (DE# 1 at 37). |
| 6/5/05 | <u>Grievance Appeal</u>: to Secretary, DOC; used "sick call" on 3/25/05 after 3 days of severe pain; has seen medical almost a dozen times; pain persists, undiagnosed and untreated. 5/9/05 clinic visit was for hepatitis, not back pain. Please refer to neuromuscular physician specialist for diagnosis. (DE# 1 at 38). |
|   | Back Pain Assessment: by ARNP; sick call, ongoing back problem. Plan: clinician referral/notification. Motrin x3 days, analgesic balm. (DE# 87-2 at 3). |
| 6/13/05 | Chronological Record of Health Care; back pain, exam conducted. (DE# 87-3 at 1). |
|   | Physician's Order Sheet: by ARNP. Diagnosis: muscle spasms. (DE# 87-2 at 7). |
|   | Medication and Treatment Record (MAR): Robaxin 750 mg. (DE# 87-3 at 7). |
| 6/21/05 | <u>Grievance Appeal Response</u>: Appeal denied. "It is determined that the response made to you by D. Kelchner, H.S.A. on 5/18/05 appropriately addressed the issues you presented. It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing. Specialty consults are ordered by your Chief Health Officer when in his judgment a medical need is present. You are encouraged to cooperate with your health care staff by following the treatment regimen prescribed. Should you experience problems, sick call is available so that you may present your concerns to your health care staff." (DE# 1 at 39). |
| 6/26/05 | <u>Grievance</u>: to Warden; denied minimal care for pinched nerve; constant pain since March; no X-ray or MRI authorized, no follow-up treatment; ARNP Bass claims injury is untreatable. (DE# 1 at 40). |
| 6/30/05 | Chronological Record of Health Care: appointment scheduled with RMC for GI consultation. (DE# 87-3 at 3). |

| | |
|---|---|
| 7/1/05 | <u>Grievance Response</u>: "Documentation indicates that you were seen on 6/13/05, assessed, and treatment plan implemented. You were also seen on 6/23/05 and there was no subjective regarding the above concern. Based on the aforementioned, your grievance is Denied." (DE# 1 at 41). |
| | Chronological Record of Health Care; note: inmate to f/u lower back & leg pain. (DE# 8703 at 5). |
| | DOC Back Pain Assessment: by ARNP; nothing relieves pain. Plan: analgesic balm & Motrin. Clinician referral/notification: "Will sched. through medical records;" "Return to see if no improvement." (DE# 87-2 at 4). |
| 7/7/05 | Chronological Record of Health Care: lower back pain; f/u 4 wks. (DE# 87-3 at 5). |
| | Physician's Order Sheet: by ARNP; diagnosis: pain. Motrin 200 mg x30 days. (DE# 87-2 at 7). |
| 7/7/05 | <u>Grievance Appeal</u>: to Secretary, DOC; denied basic health care by Wexford/OCI for suspected pinched nerve since March 2005. Intense pain 24/7, affecting sleep, daily activities. Needs referral to outside neurologist, not diagnosis by nurse. (DE# 1 at 42). |
| 7/7/05 | X-Ray Report/Request: by ARNP; low back pain, unsteady gait; **X-ray scheduled**. (DE# 1 at 46). |
| 7/14/05 | Chronological Record of Health Care: note spine **X-ray done** on inmate. (DE# 87-3 at 4). |
| 7/17/05 | X-Ray Request/Report: "POSITIVE FINDINGS: 1. MILD DEGENERATIVE JOINT DISEASE L4-5." "Abnormal lab noted, no treatment, follow up needed" (DE# 1 at 47). |
| 7/22/05 | Chronological Record of Health Care: re-evaluate back pain on 7/26. (DE# 87-3 at 6). |
| | Back Pain Assessment: by LPN; radiating pain. Plan: Motrin, Analgesic balm; refer to MD for re-evaluation. (DE# 87-2 at 5). |
| | Health Slip/Pass: bed rest lay-in 7/22-7/24. (DE# 87-2 at 13). |
| 7/26/05 | Health Information/Transfer Summary: **transfer to RMC** for GI consult. (DE# 87-2 at 18). |

9/9/05        <u>Grievance Response</u>: "It is the responsibility of your Chief Health Officer to determine the appropriate treatment regimen for the condition you are experiencing. Specialty consults are ordered by your Chief Health Officer when in his judgment a medical need is presented. Record review indicates you are currently at RMC receiving proper treatment. Please be advised that an inmate does not have the right to a provider of choice. ... Should you experience problems, sick call is available so that you may present your concerns to your health care staff." (DE# 1 at 43).

9/20/05:      Chronological Record of Health Care (RMC): follow up/sick call; chronic back pain, unsteady gait. **MRI available pending approval**. (DE# 1 at 48-50).

9/23/05       Letter: To Kathy Paul, DOC Grievance Administrator, From Maglio; 2 grievances filed re Dr. Bhadja's refusal to provide minimal care; constant pain because Bhadja ignores symptoms of pinched nerve; grievances and appeals are unresponsive to complaint; presently at RMC for hepatitis. "Can you help me?" (DE# 1 at 45).

9/28/05       Health Services Profile: by Bhadja; medical hold "pending medical appointment." (DE# 87-2 at 16).

10/6/05       MRI/NM Request/Report: **MRI performed.** (DE# 87-3 at 15).

10/12/05     MRI Report: by Dr. Dinh Bui; "IMPRESSION: DEGENERATIVE CHANGES OF THE LUMBAR SPINE WITH MULTI LEVEL DISC BULGING AND PROTRUSION WITH NEURAL COMPROMISE AS DESCRIBED ABOVE. THE POSSIBILITY OF EXTRUDED FRAGMENT FROM L4-5 IS ALSO CONSIDERED."

10/14/05     Chronological Record of Health Care: "**ortho consult submitted**." (DE# 1 at 51-52).

               Consultation Request/Consultant's Report: appointment date 11/7, to evaluate, recommend treatment plan. Provisional diagnosis: Chronic low back pain since March 2005. Designee Approval Signature/Stamp by Dr. Dinh Bui and Dr. Page Smith; "Signature of Patient" checked. (DE# 1 at 53).

10/17/05     Chronological Record of Health Care: "This is a Wexford inmate. Will return to Okeechobee CI for approval of GI and ortho consults." (DE# 1 at 52).

10/31/05   Letter: From C. Davis, HSC, Quality Management, RMC, to Maglio; "A review of your file indicates there is no consult request from Okeechobee C.I. concerning your back problems. As you stated, you were given a short course of physical therapy here at RMC, but showed no improvement. You also had an MRI of your spine here at RMC that showed some degenerative changes. Your primary care provider at RMC has requested an orthopedic consult. However, your Chief Health Officer at Okeechobee C.I. is the one who will review and approve or deny this consult request." (DE# 1 at 44).

12/8/05    Consultant's Report, M. Lord, M.D.; "PLAN: I recommend repeating his MRI on a 1.5 Tesla machine either at Memorial Medical Center or at Forbes. I also **recommend authorization for surgery** for right L4-5 lumbar discectomy...." (DE# 1 at 54).

2/13/06    Health Information Arrival Summary; To: Everglades CI, From RMC; "I/M transported here inappropriately since he was pending laminectomy @ Butler. **Will submit consult for back surg. by Dr. Lord** @ RMC. Warden apprised of this.... Signed by Roger Browne, MD." (DE# 87-3 at 19-20).

6/21/06    Memorial Hospital Jacksonville Operative Report: **laminotomy surgery performed**. (DE# 87-3 at 17).

## II. Summary Judgment Standard

Summary judgment is proper "if the pleading, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The inquiry is whether the evidence viewed in the light most favorable to the party opposing the motion "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion.

9

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must go beyond the pleadings with evidentiary materials such as his own affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56. Summary judgment is granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial" because the complete failure of proof of an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323. If the nonmoving party presents evidence that is merely colorable or not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249. Moreover, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Indus. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). Summary judgment is not a procedure for resolving a swearing contest. Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...." Anderson, 477 U.S. at 255.

### III. Deliberate Indifference Standard

To prevail on a claim of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: "(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Youmans v. Gagnon, 2010 WL 4608409 at *3 (11th Cir. Nov. 16, 2010).

A "serious medical need" is on that "has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention." <u>Mann v. Taser Int'l</u>, 588 F.3d 1291, 1307 (11th Cir. 2009). As a general matter, a serious medical need is one requiring immediate medical attention. <u>Youmans</u>, 2010 WL 2608409 at *3.

To prove "deliberate indifference" to a serious medical need, a plaintiff must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." <u>Townsend v. Jefferson County</u>, 601 F.3d 1152, 1158 (11th Cir. 2010). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835-36 (1994). Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). The inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 105-06.

The Eleventh Circuit has provided guidance concerning the distinction between "deliberate indifference" and "mere negligence." The "deliberate indifference" standard may be met in instances where a prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care; prison personnel fail to respond to a known medical problem; or prison doctors take the easier and less efficacious route in treating an inmate. <u>See</u>, <u>e.g.</u>, <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11 Cir. 1989). For instance, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical

11

treatment for the inmate." Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11 Cir. 1997). Alternatively, "[e]ven where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Whether a delay in treatment was tolerable "depends on the nature of the medical need and the reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994).

## IV. Discussion

Dr. Bhadja does not dispute that Maglio's back condition constitutes a serious medical need. However, he argues Maglio has failed to demonstrate he was deliberately indifferent to that need, and causation between the alleged indifference and Maglio's injury.

Deliberate Indifference: Maglio contends: Dr. Bhadja knew he was suffering from a serious medical condition requiring treatment; Dr. Bhadja refused to examine him, order tests or prescribe any treatment due to cost concerns and that he was only examined and treated by nurses; Dr. Bhadja sent him to RMC for an unrelated concern, refused to authorize surgery that the RMC specialist recommended; blocked Maglio's return to OCI and improperly caused him to be transferred to Everglades Correctional Institution ("ECI") so that ECI's doctor would have to absorb the cost of his back surgery. Dr. Bhadja explains Maglio was only within his care for the four-month period between March 25, 2005, and July 26, 2005, and denies he refused appropriate treatment. Dr. Bhadja supports his motion for summary judgment with complete medical records and an expert affidavit explaining the course of treatment

was reasonable while within Dr. Bhadja's care, as well as after he was transferred to RMC.

The record establishes Maglio received treatment at each request. He was examined, provided medication and instructions, and medical passes for bed rest and assistance with making his bed and carrying food trays. When over-the-counter medications failed to resolve his pain, he received several prescription medications and follow-up examinations, and X-rays which found degenerative change but indicated that no follow-up was needed. The record indicates care was also appropriate after Maglio was transferred to MRC on July 26, 2005. On September 20, 2005, MRC noted an MRI was available if approval was obtained. Approval was apparently forthcoming because the MRI was performed sixteen days later. On October 14, 2005, MRC submitted a request for an orthopedic consultation. Again, approval was apparently forthcoming because the consultation with Dr. Lord occurred less than two months later on December 8, 2005. The consultant recommended surgery, which was performed less than seven months later on June 21, 2006. Orthopedic surgery expert Dr. Ziede states in an affidavit that it was more than reasonable for Mr. Maglio to receive surgery within sixteen months of his initial complaints of low back pain, and that the record does not document in any way that the alleged lack of medical treatment received at OCI delayed the eventual surgery and/or hampered Maglio's recovery from the surgery. The foregoing indicates Maglio's condition was never ignored, and it cannot be said that Dr. Bhadja was deliberately indifferent. Indeed, the record reflects that Maglio had constant access to and was provided ongoing medical care including pain management. It is clear that the care Maglio received was more than minimally adequate. That he would have preferred to see Dr. Bhadja rather than nurse practitioners, receive X-rays and MRIs and a referral to a

specialist more quickly than he did, cannot support a claim of deliberate indifference. See, e.g., Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995) (exercise of medical judgment is an inappropriate basis for Section 1983 liability).

Maglio's allegations that Dr. Bhadja committed malpractice and was negligent for diagnosing him without examining him, are facially insufficient to support a claim of deliberate indifference. See Farmer, 511 U.S. at 835-36 (mere negligence insufficient); Estelle, 429 U.S. at 102-03(allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment); Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999), amended by 205 F.3d 1264 (11th Cir. 2000) (medical malpractice - negligence by a physician - is insufficient to form the basis for a claim for deliberate indifference).

Further, Maglio alleges for the first time in his Response to the motion for summary judgment that Dr. Bhadja would not authorize a gurney to transport him to the infirmary on March 23, 2005, so he was not able to use a sick call until March 25, 2005, when other prisoners helped him walk to infirmary. This allegation of deliberate indifference is unexhausted. The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust administrative remedies before filing a Section 1983 action to challenge prison conditions. 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory and there is no discretion to waive it. Porter v. Nussle, 534 U.S. 516, 524 (2002).

Maglio never alleged in his grievances or grievance appeals that Dr. Bhadja refused to provide treatment on March 23. Indeed, in his June 5, 2005, Grievance Appeal contradicts his present

14

assertion. In it, he stated he used a "sick call" on March 25, 2005, after three days of severe pain, and never mentioned any attempt to seek treatment on March 23. (DE# 1 at 38). As such, he failed to exhaust his administrative remedies with regards to this claim and it warrants no further discussion. See Simpson v. Holder, 200 Fed. Appx. 836 (11th Cir. 2006) (claim which is referred to tangentially in grievances but for which no remedy is requested is unexhausted).

Causation: Maglio alleges Dr. Bhadja's denial and delay of treatment caused constant severe and unnecessary pain and made his condition worsen. He has submitted incomplete copies of his medical records. Dr. Bhadja asserts he only cared for Maglio for the four-month period between March 25, 2005, and July 26, 2005, he did not unnecessarily delay treatment, and his actions did not cause Maglio's injury. He supports his assertions with an expert's affidavit and complete medical records.

Maglio's allegations fail to demonstrate causation between Dr. Bhadja's alleged indifference and Maglio's injury. The records show Maglio was under Dr. Bhadja's care between March 25, 2005, when he first sought care, and July 26, 2005, when he was transferred to MRC. The records indicate Maglio was repeatedly treated, provided medication and health passes, and was X-rayed during that four-month period he was under Dr. Bhadja's care. After he was transferred to MRC, the records are devoid of any evidence that Bhadja stalled MRC's attempts to treat Maglio by withholding referrals or improperly transferring him. As previously set forth he received and MRI and orthopedic consultation promptly. On December 8, 2005, the consultant recommended surgery. The record indicates Maglio was transferred to ECI on February 3, 2006. The doctor at ECI noted the transfer was an apparent error because

15

laminotomy surgery was pending at Butler. There is no mention of OCI or Dr. Bhadja in that report, or any other indication that Dr. Bhadja was responsible for the transfer or for any delay in treatment. Nor has Maglio submitted any documentation indicating Bhadja ever denied approval for treatment. Further, he has failed to demonstrate the allegedly erroneous transfer delayed his treatment. Dr. Browne at ECI stated in his Health Information Arrival Summary, dated two months after Dr. Lord recommended surgery, that the consultation would be submitted. (DE# 87-3 at 19-20). Maglio received the surgery in Jacksonville on June 21, 2006. Dr. Bhadja's expert affidavit states it was more than reasonable for Mr. Maglio to receive surgery within sixteen months of his initial complaints of low back pain, and that the record does not document in any way that the alleged lack of medical treatment received at OCI delayed the eventual surgery and/or hampered Maglio's recovery from the surgery. (DE# 87-1 at 3-4). Maglio has failed to demonstrate how any action or failure to act by Dr. Bhadja injured him.

Based on the foregoing, Maglio's allegations fail to demonstrate Dr. Bhadja had subjective knowledge of a risk of serious harm, and that he disregarded that risk by conduct that is more than gross negligence. Nor has he established that the alleged deliberate indifference caused his injury. Accordingly, Dr. Bhadja's motion for summary judgment should be granted.

### V. Conclusion

It is therefore recommended that the Defendant's motion for summary judgment (DE# 86) be granted, the Defendant's motion to dismiss (DE# 57) be denied as moot, and this case be closed.

Objections to this report may be filed with the District Judge

within fourteen days of receipt of a copy of the report.

    SIGNED this 13th day of December, 2010.

                                                 UNITED STATES MAGISTRATE JUDGE

cc:  Daniel Maglio
     DC# 910692
     Charlotte Correctional Institution
     33123 Oil Well Road
     Punta Gorda, FL 33955-9701

     Jeremy Thomas Palma
     Rissman Weiberg Barret Hurt et al.
     201 E. Pine Street
     15th Floor
     PO Box 4940
     Orlando, FL 32802-4940